The relief described hereinbelow is SO ORDERED.

Signed April 13, 2007.



_____
ROBERT D. BERGER
United States Bankruptcy Judge

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

In re:

DAVID JAMES MOORE and
SHARON G. MOORE,
        Debtors.

Case No. 06-20031
Chapter 13

**MEMORANDUM OPINION AND ORDER
DENYING CONFIRMATION OF CHAPTER 13 PLAN AND
DENYING TRUSTEE'S MOTION TO DISMISS**

Confirmation of Debtors' Chapter 13 plan is pending before the Court.[1] The Chapter 13 Trustee objects because Debtors' proposed plan as amended will pay nothing to unsecured creditors even though the disposable income requirement of 11 U.S.C. § 1325(b) shows Debtors could pay unsecured creditors $250 a month for five years.[2] Debtors amended the plan because one of the Debtors lost her income post-petition. The Debtors now propose to reduce both the plan payment and their Applicable Commitment Period based upon their post-petition income.

---

[1] Doc. No. 2 as amended by Doc. Nos. 36, 44, and 56. Debtors David James Moore and Sharon G. Moore appear by David A. Reed, Kansas City, Kansas. Trustee William H. Griffin appears in person and by Dianna J. Lord.

[2] Doc. No. 46.

The Trustee later filed a Motion to Dismiss because the Debtors began making the reduced plan payments they could afford rather than the plan payments they stated in the original plan.[3] The Court, having reviewed the relevant pleadings and having considered counsel's argument, sustains the Trustee's objection and denies confirmation because the plan does not comply with the Applicable Commitment Period requirement of 11 U.S.C. § 1325(b)(4). The Trustee's Motion to Dismiss is denied.

**Findings of Fact**

The parties agreed to submit the issues based on their pleadings.[4] Debtors filed for Chapter 13 relief on January 12, 2006. Debtors' Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income ("Form B22C") indicated the Debtors are above-median income debtors. Debtors reported annualized current monthly income of $65,424. The median family income for a family of two was $48,610. Debtors completed the disposable income calculation under 11 U.S.C. § 1325(b)(3) and reported monthly disposable income of $250. Debtors' original plan proposed to pay $997 per month based on a comparison of Debtors' reported Schedule I income less Schedule J expenses. The original plan proposed to pay unsecured creditors $14,250 based on $250 in monthly disposable income times 60 months.

On May 1, 2006, Debtors moved to amend their plan because Co-debtor Sharon Moore lost her income. Debtors could no longer afford $997 monthly plan payments because their income had dropped significantly. Debtors proposed to pay $559 per month for 36 months and pay unsecured creditors nothing. The Trustee objected and argued Debtors' Current Monthly Income ("CMI") does not change during the case because it is statutorily set based on income

---

[3] Doc. No. 50.
[4] Doc. No. 64.

received in the six months proceeding the petition date. In their plan, the Debtors offer to pay as much as they can now afford.

### Discussion

This contested matter is a core proceeding over which the Court has jurisdiction.[5]

Under the Bankruptcy Abuse Prevention Consumer Protection Act of 2005 ("BAPCPA"), the Applicable Commitment Period shall be "not less than 5 years, if the current monthly income of the debtor and the debtor's spouse combined, when multiplied by 12, is not less than -- in the case of a debtor in a household of 2, 3, or 4 individuals, the highest median family income of [Kansas] for a family of the same number or fewer individuals . . . ."[6] The Applicable Commitment Period may be shorter only if the unsecured claims are paid in full.[7] A debtor's CMI is defined as "the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) without regard to whether such income is taxable income, derived during the 6-month period ending on the last day of the calendar month immediately preceding the date of the commencement of the case . . . ."[8] Current Monthly Income determines Applicable Commitment Period.[9] Accordingly, an above-median income debtor may not reduce his Applicable Commitment Period based solely on a post-petition change in income because CMI is a defined, concrete, historical number.[10] Likewise, a

---

[5] 28 U.S.C. §§ 157(b)(2)(L) and 1334.
[6] 11 U.S.C. § 1325(b)(4)(A)(ii)(II).
[7] 11 U.S.C. § 1325(b)(4)(B).
[8] 11 U.S.C. § 101(10A).
[9] 11 U.S.C. § 1325(b)(4)(A)(ii).
[10] *In re Grady*, 343 B.R. 747, 749 (Bankr. N.D. Ga. 2006) (Debtors suffered a post-petition loss of income but remained committed to a five-year plan.); *in contrast, see In re Anderson,* Case No. 06-20664 (Bankr. D. Kan. filed April 13, 2007) (J. Berger) (Debtor's household size increased from two to six between petition date and confirmation hearing which changed the applicable median family income to compare to CMI, resulting in a change in Applicable Commitment Period. Unlike CMI, household size is not a concrete, defined number.).

below-median income debtor cannot be forced into a five-year commitment period.[11] As the *Beasley* court noted, the statutory definition of CMI may allow some debtors with high, but irregular, income to avoid the longer Applicable Commitment Period by controlling the timing of their petition. Conversely, debtors who suffer a significant income reduction and cannot delay their filing remain committed to the longer period.

While CMI determines Applicable Commitment Period , the Court is not completely restrained from considering the Debtors' particular circumstances under § 1325. When faced with the same issue under similar facts, the *Grady* court considered both historical CMI and future-looking projected disposable income within the "broader context" of BAPCPA. *Grady* reasoned:

> BAPCPA did not replace the Bankruptcy Code, it amended and added several new provisions. As a result, any analysis must start with the ample statutory interpretation, legislative history (along with stated policies), and case law development from the 1978 Code, unless it is clear that there has been an abrogation. One of the most important policies of the Bankruptcy Code is to provide relief for an "honest but unfortunate debtor," thereby allowing him to make a "fresh start."[12]

Recently, the United States Supreme Court has likewise stated: "We . . . will not read the Bankruptcy Code to erode past bankruptcy practice absent a clear indication that Congress intended such a departure."[13] This Court agrees. Debtors' efforts to repay their debts using their actual disposable income is in harmony with the comprehensive meaning and purpose of the

---

[11] *In re Beasley*, 342 B.R. 280, 285 (Bankr. C.D. Ill. 2006) (Debtor's wife was a teacher, and debtor filed his petition after the summer months when his non-debtor spouse did not receive any income to contribute to household expenses. Because Current Monthly Income is the average income received in the six months preceding the petition date, including any payments toward household expenses (or lack thereof) from debtor's spouse, debtor entered bankruptcy as a below-median income debtor despite the fact that his true annualized income would have placed him above the applicable median family income.).

[12] *Grady*, 343 B.R. at 751.

[13] *Travelers Casualty & Surety Co. of America v. Pacific Gas & Electric Co.*, 127 S. Ct. 1199, 2007 WL 816795, at **8 (March 20, 2007) (internal citations omitted).

-4-

Code. The Code's overarching policy is to afford the debtor a fresh start.[14] Amendments to BAPCPA did not abrogate this premise. In fact, BAPCPA uses the phrase "fresh start" for the first time in the Code. Prior to BAPCPA, the words "fresh start" were found in the Congressional Record relating to the 1978 Act.[15] Now, "fresh start" appears in Chapter 15 assuring the "opportunity for a fresh start" for an individual in a foreign proceeding seeking additional assistance from United States courts.[16] The 109th Congress would not intend to grant more in the way of a "fresh start" for foreign individuals than it would intend for its own citizens. BAPCPA retains the Code's "fresh start" foundation.

Critical to the success of any Chapter 13 plan is accurate budgeting. Chapter 13 plans are not easy to complete, with at least one court citing the failure rate to be 65% nationwide.[17] This division[18] has had greater success with almost 55% of cases closing upon completion.[19] Plan payments ordinarily supply the funds for disbursements to creditors, and plan payments derive from the debtor's net disposable income. Most Chapter 13 cases are dismissed because the debtor defaults on plan payments. Given the historical failure rate for Chapter 13 cases, Schedules I and J are not necessarily more accurate than the new Form B22C budget. Schedules I and J more often than not are an unrealistic projection of future income and costs of living.

---

[14] *In re Jass,* 340 B.R. 411, 417 (Bankr. D. Utah 2006), citing *In re Kallstrom*, 298 B.R. 753, 758 (B.A.P. 10th Cir. 2003).

[15] S.R. 989, 95th Cong., 2d Sess. 98 (1978); H.R. 595, 95th Cong., 1st Sess. 384 (1977).

[16] The statute reads as follows: "In determining whether to provide additional assistance under this title or under other laws of the United States, the court shall consider whether such additional assistance, consistent with the principles of comity, will reasonably assure -- if appropriate, the provision of *an opportunity for a fresh start for the individual* that such foreign proceeding concerns." (Emphasis added). 11 U.S.C. § 1507(b)(5).

[17] *In re Solis*, 356 B.R. 398, 413 (Bankr. S.D. Tex. 2006) (citations omitted).

[18] The Kansas City Division of the District of Kansas.

[19] According to data compiled by the office of the Standing Chapter 13 Trustee, William H. Griffin, Trustee Case Disbursements and Statistics. The Chapter 13 Trustee has disbursed over $3.5 million to general unsecured creditors in fiscal year 2006. With approximately 3,000 cases pending, the Chapter 13 Trustee made total disbursements of almost $21 million in 2006.

Chapter 13 debtors ultimately experience income and expenses widely divergent from their initial projection. Reality is that changes in income and expenses are almost certain to occur over a five-year period. A debtor's failure to present a realistic budget sets him up for a default in plan payments at the outset of his plan. Reliance on Schedules I and J for a true projection of the debtor's future cash flow is illusory at best, even if it is the debtor's best estimate of future income and expenses. Information gleaned from the backward-looking Form B22C and the estimates in Schedules I and J is not immutable, and debtors are afforded considerable flexibility to craft their budget to include a cushion for inevitable, albeit unforeseeable, expenses.

Section 1325(b) is only triggered by an objection from the Trustee or an unsecured creditor and such an objection should not demand more from the debtor based on income which in reality is unavailable to the debtor.[20] Chapter 13 trustees have the discretion not to file an objection to confirmation of a plan if the debtor's circumstances so warrant. If the debtor is sincerely putting forth his or her best effort to propose a feasible plan, an objection is not going to generate more disposable income.

Current Monthly Income is simply a starting point. Section 1325(b)(1)(B) states:

If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan –

[T]he plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

Section 1325(b)(2) states:

For purposes of this subsection, the term "disposable income" means current

---

[20] *See* 8 COLLIER ON BANKRUPTCY ¶ 1325.08[5][d] at 1325-68 (Alan N. Resnick & Henry J. Sommer, eds., 15th ed. rev. 2006).

07.04.13 Moore.wpd

monthly income received by the debtor . . . less amounts reasonably necessary to be expended . . . .

Section 1325(b)(3) then states "amounts reasonably necessary" as expenses shall be determined under § 707(b)(2)(A) and (B) if the debtor is an above-median income debtor. Section 1325(b)(3)'s incorporation of § 707(b)(2)(B) provides the Court with the ability to adjust both CMI and expenses. The debtor may demonstrate "special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces, to the extent such special circumstances that justify additional expenses or *adjustments of current monthly income* for which there is no reasonable alternative."[21] Under this provision, the Court may consider a debtor's special circumstances in deviating from the formulaic determination under § 1325(b)(3). Incorporation of § 707(b)(2) in this manner imparts to this Court considerable discretion "to temper the arbitrariness of the means test numbers."[22] Here, in the disposable income calculation, the Court may adjust Debtors' CMI upon the proper showing of special circumstances.[23]

However, the same discretion is not similarly provided in the Applicable Commitment Period determination. The Code makes "special circumstances" relevant in the disposable income calculation by incorporating § 707(b)(2)(B) into § 1325(b)(3), but § 707(b)(2)(B) is not incorporated into § 1325(b)(4), which sets the Applicable Commitment Period. Thus, the Code does not allow the debtor to alter his Applicable Commitment Period by a § 707(b)(2)(B)

---

[21] 11 U.S.C. § 707(b)(2)(B)(i) (emphasis added).

[22] *See* 6 COLLIER ON BANKRUPTCY ¶ 707.05[2][d] at 707-51 (Alan N. Resnick & Henry J. Sommer, eds., 15th ed. rev. 2006).

[23] A serious medical condition or a call or order to active duty in the Armed Forces are two examples of special circumstances and are not an exhaustive list. *See, e.g., In re Thompson,* 350 B.R. 770 (Bankr. N.D. Ohio 2006) (repayment of 401(k) loan); *but see In re Hanks,* 2007 WL 60812 (Bankr. D. Utah January 9, 2007) (reasonable alternatives may exist for loss of employment).

-7-

07.04.13 Moore.wpd

adjustment to CMI.

In this case, Debtors had higher income in the six months preceding their bankruptcy. Debtors' CMI exceeds the median family income for a household of two. The amended plan cannot be confirmed as a three-year plan because Debtors' CMI requires a five-year Applicable Commitment Period. Although Debtors' CMI determines their commitment period, the Debtors are not necessarily committed to the $997 per month plan payment. Debtors must prove special circumstances to support their amended plan payment. The Court notes these Debtors' circumstances have changed considerably since filing the petition. In addition to losing one income, Debtors have relocated to Florida. Thus, Debtors must document, explain, and attest to any special circumstances which would justify a requested adjustment to their CMI for purposes of calculating their disposable income.[24] At this point in the proceeding, the record is insufficient to establish whether an adjustment to either current monthly income or expenses is warranted or whether any reasonable alternatives exist for these Debtors.

## Conclusion

Debtors' amended plan cannot be confirmed because it does not provide for a five-year Applicable Commitment Period. The Trustee's Objection to Plan Modification is sustained, but the Trustee's Motion to Dismiss is denied. The Debtors are allowed 45 days to file an amended plan and to establish any special circumstances they wish the Court to consider with respect to their disposable income calculation. If the parties cannot stipulate to the Debtors' circumstances within 45 days of this Order, an evidentiary hearing shall be set.

IT IS SO ORDERED.

---

[24] *See* 11 U.S.C. § 707(b)(2)(B)(ii) and (iii) for additional documentation and affidavits required to establish special circumstances.

-8-

07.04.13 Moore.wpd

Case 06-20031   Doc# 79   Filed 04/13/07   Page 8 of 9

###

ROBERT D. BERGER
U.S. BANKRUPTCY JUDGE
DISTRICT OF KANSAS